NATIONAL BANK OF COMMERCE OF SAN ANTONIO, TEXAS, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 93164. Promulgated August 18, 1939.

*Robert S. Durno, Esq.,* for the petitioner.
*R. P. Hertzog, Esq.,* and *F. B. Schlosser, Esq.,* for the respondent.

## OPINION.

ARNOLD: This proceeding requires a classification of the loss sustained by the petitioner in connection with the making of loans over a period of years. During the taxable year the petitioner took over the property securing the total loans at a time when the agreed value of the property was $30,701.04 less than the indebtedness secured thereby. The respondent contends that the petitioner had a capital

net loss, and is limited by section 117 (d) of the Revenue Act of 1934 to a deduction of $2,000. The petitioner contends that the $30,701.04 is deductible either as (1) a bad debt, or (2) an ordinary loss.

It has been stipulated that the loans were made by petitioner in the ordinary course of its banking business and that the loans were made for profit. The facts here distinguish this proceeding from the decided cases involving the purchase or sale of real estate and the giving or taking back of a mortgage or deed of trust to secure the unpaid balance. See *Betty Rogers*, 37 B. T. A. 897; affirmed by the Ninth Circuit in *Rogers* v. *Commissioner*, 103 Fed. (2d) 790, which involved a purchase of real property, and the subsequent conveyance of the property back to the vendor in consideration of release from liability and the cancellation and surrender of the note for the unpaid balance; and *Harry Payne Bingham*, 38 B. T. A. 913, on appeal to the Second Circuit, which involved the sale of real property for cash and notes secured by a mortgage, and upon default the reacquisition of the real property at a value less than the amount of the notes.

The debtor of the petitioner was successively the estate of Van A. Webster, deceased, and the trust estate created by the deed of June 2, 1931. The notes renewed after June 2, 1931, were executed by a trust officer of the petitioner, who was acting for and in behalf of the petitioner bank in its fiduciary capacity. In other words the bank in its own right was lending money to itself in its capacity as trustee, and the petitioner bank had agreed that it would look only to the property securing the indebtedness for recovery of the sums loaned. Marie Carter Sturges was not personally liable for the payment of the amount due petitioner. It was not her indebtedness. She neither executed the notes nor did she make herself personally responsible in any way for the payment thereof.

The deed, dated May 18, 1935, indicates that the petitioner had advanced from time to time after June 2, 1931, further and additional sums to the trust estate for the upkeep, maintenance, and payment of taxes upon the real property securing the total indebtedness. The deed was executed to the petitioner in its own right "in payment and full satisfaction of all the said indebtedness" owing petitioner, "and in satisfaction, release and settlement of all obligations, duties and liabilities agreed to be performed and/or assumed by" petitioner, as trustee.

At the time Marie Carter Sturges executed the deed of May 18, 1935, to the petitioner and at the time petitioner accepted the conveyance, the trust estate was insolvent, and her rights therein, which were subject to petitioner's rights, were of no value whatsoever. In so far as Marie Carter Sturges was concerned, therefore, she parted with nothing of value by her last conveyance, and was relieved of no obligation thereby.

In our opinion this proceeding is governed by the same principle as that applied in *James R. Stewart*, 39 B. T. A. 87; *Harold S. Denniston*, 37 B. T. A. 834, and *Charles T. Carlson*, 39 B. T. A. 185. The interest of Marie Carter Sturges in the property securing the notes was conveyed to the petitioner in settlement and satisfaction of the indebtedness of the trust estate. To the extent that the security failed to extinguish the indebtedness the loans of the petitioner represented worthless debts. Since there is no question about the charge-off of the remainder of the debts in the taxable year, the deduction claimed should have been allowed.

Some of the decided cases have held that the compromise of notes for less than their face value results in an ordinary loss. *Hale* v. *Helvering*, 85 Fed. (2d) 819; *Commissioner* v. *Freihofer*, 102 Fed. (2d) 787, affirming *Sol Greisler*, 37 B. T. A. 542; *Lloyd Jones*, 39 B. T. A. 531; *Commonwealth, Inc.*, 36 B. T. A. 850. Much of the language used in these decisions would be applicable here if we should rest our decision upon a determination that an ordinary loss as distinguished from a capital loss resulted. But we prefer to rest our decision upon the classification of this deduction as a bad debt.

For the foregoing reasons it is our opinion that no sale or exchange within the meaning of section 117 occurred, and the deduction claimed should be allowed as a bad debt ascertained to be worthless and charged off in the taxable year.

*Decision will be entered under Rule 50.*